**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND
Northern Division**

MARCH ON MARYLAND, INC.
1801 Green Top Court
Annapolis, Maryland 21401
Anne Arundel County

ANNE ARUNDEL COUNTY
INDIVISIBLE COALITION
214 St. Anton's Way
Arnold, Maryland 21012
Anne Arundel County

CAUCUS OF AFRICAN AMERICAN
LEADERS
230 Garden Gate Lane
Annapolis, Maryland 21403
Anne Arundel County

DR. MARTIN LUTHER KING JR.
COMMITTEE
230 Garden Gate Lane
Annapolis, Maryland 21403
Anne Arundel County

MICHELLE EVE HURWITZ
1801 Green Top Court
Annapolis, Maryland 21401
Anne Arundel County

VICKIE GIPSON
719 S. Cherry Grove Ave, Apt. 102
Annapolis, Maryland 21401
Anne Arundel County

YASEMIN JAMISON
214 St. Anton's Way
Arnold, Maryland 21012
Anne Arundel County

Civil Action No. 18-cv-701

**Jury Trial Requested**

82244597_6

MONICA LINDSEY
2 Woodward Court
Annapolis, Maryland 21403
Anne Arundel County

CARL SNOWDEN
230 Garden Gate Lane
Annapolis, Maryland 21403
Anne Arundel County

       Plaintiffs,

    v.

ELLINGTON E. CHURCHILL, JR.
Individually, and in his official capacity as
Secretary of the Maryland Department of
General Services,
301 West Preston Street
Baltimore, Maryland 21201
Baltimore County

MICHAEL WILSON
Individually, and in his official capacity as
Chief of the Maryland Capitol Police,
301 West Preston Street
Baltimore, Maryland 21201
Baltimore County

       Defendants.

## COMPLAINT

Plaintiffs March on Maryland, Inc. ("March on Maryland"), Anne Arundel County Indivisible Coalition ("Indivisible"), the Caucus of African American Leaders (the "Caucus"), the Dr. Martin Luther King Jr. Committee (the "MLK Committee"), Michelle Eve Hurwitz ("Hurwitz"), Monica Lindsey ("Lindsey"), Vickie Gipson ("Gipson"), Yasemin Jamison ("Jamison"), and Carl Snowden ("Snowden"), by their attorneys, allege as follows:

2

82244597_6

**INTRODUCTION**

1.      Lawyers' Mall is a public park at the foot of the entrance to the Maryland General Assembly building—the seat of Maryland's legislature—in Annapolis, Maryland.  Lawyers' Mall features a statue of Thurgood Marshall, the renowned civil rights activist and the nation's first African American Supreme Court justice.  During the State's legislative session, legislators and their staff members often walk to and from the General Assembly on paths adjacent to Lawyers' Mall.

2.      Because of its proximity to the General Assembly, Lawyers' Mall has for decades been a meeting ground for members of the public to exchange ideas, make their voices heard on a variety of social issues, and engage in other civic speech protected by the First Amendment to the United States Constitution and Article 40 of the Maryland Constitution's Declaration of Rights.

3.      Plaintiffs represent a segment of the vibrant community of individuals and groups in Annapolis and elsewhere in Maryland who devote significant time and resources toward promoting social justice causes on behalf of the community, including through rallies and other demonstrations at Lawyers' Mall.  Plaintiffs intend to continue using Lawyers' Mall in the future for their social justice work.

4.      Defendant Ellington E. Churchill, Jr. is Secretary of the Maryland Department of General Services (the "Department"), which oversees public buildings and grounds throughout Annapolis and Baltimore, including Lawyers' Mall.  *See* Md. State Fin. & Proc. Code § 4-601 (2016).

5.      The Department is charged with enforcing Md. Code Regs. ("COMAR") 04.05.01.07 (the "Regulation"), which prohibits organizations and individuals, including

3

Plaintiffs, from "soliciting" on all 60 state facilities within the Department's regulatory purview, including Lawyers' Mall.  Defendant Michael Wilson, in his capacity as Chief of the Maryland Capitol Police, is responsible for police enforcement of the Regulation.

6.     The Regulation is an unconstitutional restriction on Plaintiffs' right to free speech protected by the First Amendment to the United States Constitution and Article 40 of the Maryland Declaration of Rights.   Every day that the Regulation remains in effect, citizens, including Plaintiffs, are prohibited from exercising their well-recognized constitutional right to engage in solicitation.  Plaintiffs therefore seek a judgment declaring that the Regulation is unconstitutional and entering a preliminary and permanent injunction prohibiting the Defendants Churchill and Wilson, in their official capacities, from enforcing the Regulation.

**THE PARTIES**

7.     Plaintiff March on Maryland is a Section 501(c)(3) charitable corporation whose mission is to champion First Amendment rights primarily through rallies and demonstrations throughout Maryland, including at Lawyers' Mall in Annapolis.  March on Maryland's principal office is located at 1801 Green Top Court, Annapolis, Maryland, 21401.

8.     Plaintiff Hurwitz is the executive director of March on Maryland and a member of its board of directors.

9.     Plaintiff Indivisible is an unincorporated grassroots organization whose goal is to raise awareness of and peacefully challenge regressive state and federal social policies.

10.     Plaintiffs Jamison and Lindsey are the co-founders and lead community organizers of Indivisible.

11.     Plaintiff Caucus is an unincorporated consortium of organizations and individuals, including the NAACP, elected officials, and faith and community leaders, among others.  The

82244597_6

Caucus seeks to raise awareness about current civil rights issues impacting the African American community, including by encouraging the public to engage in local, state, and national elections to impact positive change in the African American community. In addition to organizing demonstrations, the Caucus hosts monthly meetings to discuss issues affecting the community and solicits donations for other civil rights organizations.

12.     Plaintiff MLK Committee is a Section 501(c)(3) charitable organization whose mission is to honor the memory of Dr. Martin Luther King Jr., by organizing and hosting community events celebrating Dr. King's legacy and championing civil rights causes. MLK Committee's principal office is located at 230 Garden Gate Lane, Annapolis, Maryland 21403.

13.     Plaintiff Carl Snowden is the founder of Plaintiffs the Caucus and MLK Committee. He is an activist and former Director of Civil Rights for the Maryland Attorney General's Office.

14.     Plaintiff Vickie Gipson is a member of Plaintiffs the Caucus and MLK Committee. She is a social and civil rights activist.

15.     Defendant Ellington E. Churchill, Jr. is the current Secretary of the Maryland Department of General Services. The Department is a state agency authorized under Maryland law to promulgate and enforce regulations pertaining to certain Maryland public properties, including Lawyers' Mall. *See* Md. State Fin. & Proc. Code § 4-607 (2016). The Department issued the Regulation at issue in this lawsuit. As Secretary, Churchill is responsible for the actions and inactions of the Department, as well as for establishment, maintenance, and enforcement of regulations governing the Department, including the Regulation challenged here. During all times mentioned in this Complaint, Secretary Churchill acted under the color of Maryland law. He is sued both in his official and individual capacities.

82244597_6

16.     Defendant Michael Wilson is the Chief of the Maryland Capitol Police—the police force within the Maryland Department of General Services—holding the rank of Colonel. In his capacity as Maryland Capitol Police Chief, Chief Wilson oversees security and law enforcement functions at the Annapolis government complex and is responsible for police enforcement of regulations governing State properties, including Lawyers' Mall.  As discussed below, with respect to the regulation challenged herein, Chief Wilson has interpreted and applied the regulation to limit Plaintiffs' speech during activities they conduct at Lawyers' Mall.  During all times mentioned in this Complaint, Chief Wilson acted under the color of Maryland law.   He is sued both in his official and individual capacities.

## JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367.

18.     The Court has personal jurisdiction over the parties pursuant to 28 U.S.C. § 1391 because all defendants reside in this District and the conduct complained of herein occurred here. For the same reasons, pursuant to § 1391, venue is also proper in this District.

## FACTUAL ALLEGATIONS

### The Solicitation Ban

19.     The challenged Regulation provides:

> A. The soliciting of alms, money, or contributions, commercial soliciting, the display or distribution of commercial advertising, political soliciting, or the collection of private debts, is prohibited on the property, except as permitted by § B of this regulation.
>
> B. Permissible solicitations require the prior approval of the occupying agency head for scheduling, safety, security, and traffic purposes.  Permissible solicitations are limited to:

82244597_6

(1) Solicitation by national or local campaigns for savings bonds, health, welfare, and charity;

(2) Solicitations by labor organizations for membership or dues as authorized by law;

(3) Recruitment campaigns for the Armed Forces, National Guard, and other federal or State agencies, as previously approved by the occupant agencies;

(4) Operation of vending facilities and concessions as part of the operation of the property for the benefit of employees and the public;

(5) Personal notices posted by employees on authorized bulletin boards; and

(6) Activities on portions of the property leased to other individuals or organizations.

COMAR 04.05.01.07.

20.     The Regulation does not contain any statements of purpose indicating the Department's reasons for prohibiting solicitation subject to the enumerated exceptions, and upon information and belief, no other regulatory or legislative history exists to substantiate the Regulation's purpose.

21.     The only justifications the Department has given for the Regulation's ban on solicitation were offered after Plaintiffs' counsel sent a letter alerting the Department of the Regulation's unconstitutionality.  *See* Ex. 1 (ACLU Letter dated Jan. 12, 2018).  In a January 2018 press statement, the Department explained that the Regulation "prevents political organizations from abusing state/public property."  *See* Ex. 2 (Baltimore Sun article).  A month later, in a letter to Plaintiffs' counsel, the Department stated that the Regulation promotes "a substantial government interest in protecting the safety and welfare of the public."  Ex. 3 (Department's Letter dated Feb. 1, 2018).

82244597_6

22.    Solicitation, including fundraising, is a form of speech that is protected by the First Amendment and the Maryland Constitution.

23.    The Regulation prohibits soliciting based on the subject matter of the solicitation, allowing, for example, solicitation for "charity" or for labor union dues, but prohibits other "soliciting."

24.    The Regulation restricts speech based on content and cannot survive the strict scrutiny standard imposed on government entities.  Under this standard, the government must show that the restriction on speech furthers a compelling government interest and is narrowly tailored to further that interest.

25.    The Regulation fails strict scrutiny because it does not further a compelling government interest.  The Regulation contains no statement of purpose or intent that would justify its restriction on solicitation, and the Department's *post hoc* justifications for the Regulation are unpersuasive.

26.    The Regulation's ban on solicitation is not narrowly tailored to achieve either of the Department's *post hoc* rationalizations—to prevent political organizations from abusing public property or to protect the safety and welfare of the public.  The Regulation allows certain categories of solicitation, such as for charities or union dues, and not others, such as Plaintiffs' attempt to raise money for a victim of the Las Vegas shooting.  The Regulation fails to prevent the abuse of public property and to protect the public's safety and welfare by restricting Plaintiffs' fundraising but not other forms of solicitation.

27.    Lawyers' Mall is a public park that has been used by members of the public for decades to exchange ideas and have their voices heard on a variety of issues affecting the Annapolis community and beyond.  Lawyers' Mall is therefore a traditional public forum, and

8

82244597_6

courts have recognized the strong public interest in favor of permitting speech in such forums and against unreasonable and unjustified restrictions on speech.

### The March for Racial Justice

28.    During the fall of 2017, Plaintiffs March on Maryland and Indivisible, through the efforts of Plaintiffs Hurwitz, Lindsey, and others, began making arrangements for a March For Racial Justice (the "Rally"), to be held at Lawyers' Mall.

29.    The purpose of the Rally was to raise awareness about social justice issues affecting racial minorities in Annapolis and beyond.  The Rally would also honor the memory of the civil rights activist Fannie Lou Hamer.

30.    Plaintiff Hurwitz applied for and was granted a permit for the Rally by the Department.

31.    As part of the permitting process, Plaintiffs Hurwitz and Gipson attended a walk-through of Lawyers' Mall with Capitol Police Sergeant Dennis Donaldson and Lieutenant Rebecca Labs, on September 27, 2017.

32.    Plaintiff MLK Committee arranged to hold a sister-event on the same day as the Rally, titled the Fannie Lou Hamer Awards.  That event was scheduled to take place shortly after the conclusion of the Rally at a location within walking distance from Lawyers' Mall.  Plaintiffs intended that Rally participants could, upon the conclusion of the Rally, make their way to the Fannie Lou Hamer Awards event.

33.    Accordingly, during the walk-through, Plaintiff Gipson inquired whether Plaintiff MLK Committee could sell tickets to the Fannie Lou Hamer Awards event during the Rally on Lawyers' Mall.  In response, Sergeant Donaldson and Lieutenant Labs told Plaintiff Gipson that

9

the organizations could not engage in any fundraising during the Rally, although they would be allowed to share information about the Fannie Lou Hamer Awards.

34.     The Rally was held, as planned, on October 1, 2017.  Participants gathered and rallied at Lawyers' Mall before marching down Annapolis' Main Street.  The Rally, which was a peaceful demonstration, featured speakers who shared their views about racial justice issues from a raised podium at Lawyers' Mall.  Participants carried signs and placards and chanted rallying cries.

35.     Pursuant to Sergeant Donaldson's and Lieutenant Labs' admonition that fundraising was not permitted at Lawyers' Mall, Plaintiffs did not solicit any donations or ask participants to purchase tickets for the Fannie Lou Hamer Awards event at the Rally.

36.     Plaintiff Hurwitz regularly uses her personal funds to pay for costs associated with demonstrations such as the Rally.  Collecting donations at demonstrations would allow Plaintiffs to defray the costs associated with events like the Rally.

### The Vigil for the Victims of the Las Vegas Shooting

37.     On the evening of October 1, 2017, a gunman in Las Vegas, Nevada, killed 58 people and injured over 800 others who were attending a concert.  One of the victims of that shooting is a Maryland native who, upon information and belief, was in critical condition in the weeks following the shooting.

38.     Plaintiffs immediately began making arrangements for a vigil in support of the Las Vegas victims and their families (the "Vigil"), to be held at Lawyers' Mall.  As part of that effort, Hurwitz applied for and was granted a permit for the Vigil by the Department.

39.     Plaintiff Snowden intended to ask those who attended the Vigil to make monetary donations into a collection box for the benefit of the Maryland victim.

10

40.     After Plaintiff Gipson learned at the walk-through in advance of the Rally that it was the Department's position that no fundraising was permitted at Lawyers' Mall, she informed Plaintiff Snowden about the restriction.

41.     Plaintiff Snowden called Capitol Police Chief Michael Wilson seeking clarification of this policy.  Chief Wilson responded to Plaintiff Snowden's call with a message stating that Chief Wilson needed to discuss the matter with the Department's legal advisers.

42.     The Vigil was held, as planned on October 4, 2017.  Attendees lit candles, some said prayers, and several speakers shared their thoughts and emotions about the Las Vegas shooting and gun violence in general.

43.     Based on their understanding that solicitation was not permitted on Lawyers' Mall, Plaintiffs did not ask for any donations at the Vigil.

44.     Several days after the Vigil, Chief Wilson sent Plaintiff Snowden an email copying and pasting the Regulation but providing no further explanation of the Regulation's purpose.  *See* Ex. 1, Attachment A.

**Plaintiffs' Letter and the Department's Response**

45.     By letter dated January 12, 2018, Plaintiffs, through their counsel, set forth a legal analysis of the Regulation in a letter to the Department and its counsel, concluding that the Regulation is a violation of Plaintiffs' free speech rights.  Plaintiffs' letter informed the Department that Plaintiffs would seek an injunction prohibiting the Department's continued enforcement of the Regulation should the Department decline to suspend enforcement of the Regulation.  *See* Ex. 1.

82244597_6

46.     After Plaintiffs sent their analysis, but before the Department issued its formal response, a Department spokesman stated to the press that the Regulation "prevents political organizations from abusing state/public property."  *See* Ex. 2.

47.     By letter dated February 1, 2018, the Department informed Plaintiffs' counsel at the ACLU that it would not suspend the Regulation.  The Department contends that the Regulation is intended to "protect the public peace, health and safety," and that it is "narrowly tailored" and "neutral in its content."  *See* Ex. 3.

## CLAIMS FOR RELIEF

## COUNT I

### Facial and As Applied Challenge to the Regulation
**(First Amendment to the U.S. Constitution, 42 U.S.C. § 1983, and 28 U.S.C. § 2201)**

48.     The foregoing paragraphs are incorporated as though fully restated herein.

49.     The First Amendment to the United States Constitution, which applies to state agencies through the Fourteenth Amendment, prohibits "abridging the freedom of speech."

50.     The Supreme Court has long acknowledged that "freedom of speech . . . [is a] fundamental personal right[] and liberty[].  The phrase is not an empty one and [is] not lightly used."  *Schneider v. New Jersey*, 308 U.S. 147, 150 (1939).  "[A]bove all else, the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  *Police Dep't of the City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).

51.     The Supreme Court has held a restriction on speech "presumptively unconstitutional" and subject to strict scrutiny if, on its face, the regulation is "targeted at specific subject matter . . . even if it does not discriminate among viewpoints within that subject matter."  *Reed v. Town of Gilbert*, 576 U.S. __, 135 S. Ct. 2218, 2230 (2015).

12

52.    Furthermore, prohibitions on protected speech on grounds that "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussion public questions," *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983), are sharply circumscribed.

53.    The Regulation's ban on solicitation, on its face, infringes Plaintiffs' right to exercise freedom of speech at Lawyers' Mall, in violation of the First Amendment to the United States Constitution.

54.    Because the Regulation restricts constitutionally protected speech in a traditional public forum, without any justification, it cannot survive strict scrutiny under the First Amendment, and the Department should therefore be prohibited from enforcing the Regulation.

55.    As applied to Plaintiffs, the Regulation unconstitutionally constrains their protected speech—to solicit for social justice causes—at Lawyers' Mall, as described above, giving rise to their claims to relief under 42 U.S.C. § 1983.

56.    The Regulation unconstitutionally chills Plaintiffs' protected speech and, without declaratory and injunction relief, will continue to do so.

## COUNT II

**Facial and As Applied Challenge to the Regulation**
**(Art. 40 of the Md. Decl. of Rights and 28 U.S.C. § 2201)**

57.    Plaintiffs incorporate by reference all allegations made in Count I as though fully restated herein.

58.    Article 40 of the Maryland Constitution's Declaration of Rights provides "that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects."

82244597_6

59.    "Article 40 is read generally *in pari materia* with the First Amendment." *Nefedro v. Montgomery County*, 996 A.2d 850, 855 n.5 (Md. 2010).

60.    For the reasons articulated in Count I, the Regulation's ban on solicitation, both on its face and as applied, infringes Plaintiffs' right to exercise freedom of speech under Article 40 of the Maryland Constitution's Declaration of Rights.

61.    The Regulation impermissibly chills Plaintiffs' protected speech and, without declaratory and injunctive relief, will continue to do so.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in Plaintiffs' favor with an order

(i)    Declaring that COMAR 04.05.01.07 on its face violates the First Amendment to the United States Constitution and Article 40 of the Maryland Constitution;

(ii)    Declaring that the application of COMAR 04.05.01.07 to Plaintiffs as set forth above violated their rights under the First Amendment to the United States Constitution, giving rise to their entitlement to relief pursuant to 42 U.S.C. § 1983;

(iii)    Declaring that application of COMAR 04.05.01.07 to Plaintiffs as set forth above violated their rights under Article 40 of the Maryland Declaration of Rights;

(iv)    permanently enjoining the Defendants, in their official capacities, from enforcing COMAR 04.05.01.07 as currently drafted;

(v)    awarding Plaintiffs damages against defendants Churchill and Wilson in their individual capacities only;

14

82244597_6

(vi)    awarding Plaintiffs reasonable attorney's fees and costs incurred in pursuing this

litigation pursuant to 42 U.S.C. § 1988; and

(vii)    entering any other relief this Court deems just and equitable.


Dated:  March 8, 2018                                          Respectfully submitted,

                                                                   /s/ Scott H. Christensen
                                                                Scott H. Christensen (Bar No. 16201)
                                                                John F. Wood*
                                                                Tabitha Bartholomew*
                                                                Hughes Hubbard & Reed LLP
                                                                1775 I Street NW, Suite 600
                                                                Washington, D.C. 20006
                                                                (202) 721-4600
                                                                scott.christensen@hugheshubbard.com
                                                                john.wood@hugheshubbard.com
                                                                tabitha.bartholomew@hugheshubbard.com

                                                                Deborah Jeon (Bar No. 06905)
                                                                American Civil Liberties Union of Maryland
                                                                3600 Clipper Mill Road, Suite 350
                                                                Baltimore, Maryland 21211
                                                                (410) 889-8550
                                                                jeon@aclu-md.org

                                                                *motions to be filed for admission *pro hac vice*

15

82244597_6